IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIENA JAMES,

              Plaintiff,

    v.

HOME DEPOT U.S.A., INC.,

              Defendant.

CIVIL ACTION FILE NO.

1:14-CV-01502-WSD-JFK

## ORDER AND FINAL REPORT AND RECOMMENDATION

Plaintiff Tiena James filed the above-styled employment discrimination action against Defendant Home Depot U.S.A., Inc. ("Home Depot"), on May 19, 2014.[1] [Doc. 1]. Plaintiff alleges that Defendant took disciplinary actions against her and terminated her employment on the basis of her race, gender, and disability and in retaliation for prior complaints of discrimination. [Id.]. Plaintiff's claims are brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* [Id.]. Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's claims based upon the pleadings, statement of material facts, exhibits, and discovery materials submitted to the court. [Doc. 36].

---

[1]Although Plaintiff was represented by counsel when the complaint was filed, she is currently proceeding *pro se*. [Docs. 7. 10].

## I.      Defendant's Motion for Leave to Supplement

Also pending before the court is Defendant's motion for leave to supplement its summary judgment motion with newly received evidence.  [Doc. 38].  After the summary judgment motion was filed, Defendant received records from the Social Security Administration relevant to Plaintiff's claims for damages.  [Id. at 1-2].  Defendant now moves the court to deem the supplemental materials timely filed.  [Id.].  Plaintiff has offered no opposition to Defendant's motion, and there is no evidence that the delay in submitting the materials was caused by Defendant.  For these reasons, the court **ORDERS** that Defendant's motion [Doc. 38] for leave to supplement its summary judgment motion with newly received evidence be **GRANTED**.

## II.     Facts

The court's local rules: (1) require the movant for summary judgment to provide a "separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried"; (2) require the respondent to provide responses to each of the movant's numbered undisputed material facts; and (3) state that the movant's facts will be deemed admitted absent proper refutation.  LR 56.1 B.(1), (2), N.D. Ga.  Specifically, the local rules require, along with a responsive brief, a response to the movant's statement of undisputed facts –

2

> (1)     This response shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts.
>
> (2)     This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).

LR 56.1 B.(2)a., N.D. Ga.  Compliance with Local Rule 56.1 is the "only permissible way . . . to establish a genuine issue of material fact" in response to the moving party's assertion of undisputed facts.  Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008).  "The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement."  Id.  The Court must then review the movant's statement of undisputed facts and ensure – by, "[a]t the least, . . . review[ing] all of the evidentiary materials submitted in support of the motion for summary judgment" – that the movant's statement of facts is in fact supported.  Id. at

1269 (quoting <u>United States v. One Piece of Real Property</u>, 363 F.3d 1099, 1101-02 (11th Cir. 2004)) (internal quotation marks omitted).

In the present case, Defendant filed a statement of undisputed material facts in support of its summary judgment motion. [Doc. 36]. Although Plaintiff filed a response brief in opposition to Defendant's summary judgment motion, Plaintiff's "response . . . did not 'contain individually numbered, concise, non-argumentative responses corresponding to each of the movant's enumerated material facts.'" <u>Williams v. Slack</u>, 438 Fed. Appx. 848, 850 (11th Cir. 2011) (quoting <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1302 (11th Cir. 2009)). In fact, Plaintiff offered no response whatsoever to Defendant's statement of undisputed material facts. [Doc. 39]. As a result, the material facts contained in Defendant's statement are deemed admitted and, in accordance with the Eleventh Circuit's instruction in <u>Reese</u>, 527 F.3d at 1268, the court will "disregard or ignore evidence relied on by [Plaintiff] . . . that yields facts contrary to those listed in the [Defendant's] statement." The court has reviewed the evidentiary material submitted by Defendant in support of its statement of undisputed facts to ensure that those facts are supported by the record. <u>See</u> <u>id.</u> at 1269. In accordance with the foregoing principles, the following facts are deemed to be true for

4

the limited purpose of evaluating Defendant's motion [Doc. 36] for summary judgment.

Plaintiff Tiena James was hired by Defendant Home Depot in 2005. [Plaintiff's Deposition ("Pla. Dep.") at 20-21]. In December 2010, Plaintiff was promoted to an Operations Assistant Manager position. [Id. at 21-22]. As an Operations Assistant Manager, Plaintiff had to be able to work a flexible schedule and was on call even when not scheduled. She would sometimes come in to work at unscheduled hours to answer alarm calls. [Defendant's Statement of Material Facts ("DSMF") ¶ 28; Pla. Dep. at 61-62].

In January 2011, Plaintiff became ill and was hospitalized. [Pla. Dep. at 21-24]. Plaintiff was working at the Home Depot store in Suwanee, Georgia, at the time. [Id.]. Plaintiff testified, "I went to go get a physical and found out my body was in chaos and they admitted me into the hospital." [Id. at 22]. She went on a medical leave of absence for an extended period and began receiving dialysis treatments. [Id. at 21-24]. Plaintiff returned to work in June 2011 at the store in Lawrenceville. [Id. at 23]. That same month, Plaintiff provided a doctor's note to Home Depot that stated, "Mrs. James is also preparing to start at home dialysis." [DSMF ¶ 42]. Plaintiff currently does home dialysis at night, but she did not do dialysis at home while working for Home

5

Depot. She completed the required training for home dialysis after her Home Depot employment had ended. [DSMF ¶ 41].

Plaintiff attended corporate office training for operations around June 2011. [DSMF ¶ 1]. Plaintiff was familiar with the policies included in the employee handbook and with Home Depot's 2009 Manager's Guide to the Code of Conduct. [Id.]. Plaintiff also understood as a manager that she was responsible for complying with the policies in the handbook and the Manager's Guide. [Id.]. In September 2011, Aaron Seay became Plaintiff's Store Manager. [Seay Declaration ("Dec.") ¶ 2].

In 2012, while working at the Lawrenceville store, Plaintiff switched from nocturnal dialysis appointments (which were from 9:00 p.m. to 3:30 a.m. or 4:00 a.m.) to daytime appointments (6:00 a.m. to noon or 1:00 p.m.) as a personal choice. Plaintiff testified that she made this decision due to "personal reasons at home." [DSMF ¶ 29; Pla. Dep. at 62-65, 71-75]. Plaintiff testified that there were "eight to ten" times Store Manager Aaron Seay did not schedule any coverage for Plaintiff to leave for a daytime dialysis appointment. [DSMF ¶ 27; Pla. Dep. at 73-74]. Plaintiff's scheduling concern was that she needed a manager on duty to be scheduled with her so that she could leave for dialysis and "go to my treatment and come back." [DSMF ¶ 31; Pla. Dep. at 76]. Plaintiff's schedule was not a problem when she "did nocturnal

6

[dialysis], [she] left at night, so," it was only a concern while she was doing daytime dialysis.  [DSMF ¶ 30].

Plaintiff had dialysis appointments Monday, Wednesday and Friday when she did daytime dialysis in 2012, and she was scheduled to work five days a week at the Lawrenceville store.  [DSMF ¶ 40].  Plaintiff testified that with respect to the daytime dialysis and scheduling problems, "[t]here were times after I started pointing out the fact that I needed coverage that I was starting to get that coverage."  [DSMF ¶ 31; Pla. Dep. at 75].  Plaintiff was never disciplined for missing scheduled work time due to dialysis.  [DSMF ¶ 36; Pla. Dep. at 98-99].  Sometimes Plaintiff had to change her own dialysis appointments unexpectedly and go later if "their machines were acting up."  [DSMF ¶ 37].  Store Manager Seay never told Plaintiff that she could not leave or change her schedule for emergencies, and, when she talked with him about a need to change her schedule for a doctor's appointment, he never refused to do that.  [DSMF ¶ 43].

On April 11, 2012, after an investigation by Home Depot's Associate Advice and Counsel Group ("AACG"), Plaintiff James received a progressive disciplinary notice for conduct in violation of company standards.  [DSMF ¶ 2; Pla. Dep. at 122, 125, Ex. 6].  The disciplinary notice stated:

7

> On multiple occasions, Tiena met socially with hourly associates outside the workplace potentially creating a negative impression of the leadership in the store.  Additionally, she communicated via text message and personal phone with hourly associates regarding work related issues while they were off the clock, even after being advised by the Store Manager to cease.

[Id.].  Plaintiff acknowledges that she had engaged in the actions described in the April 2012 disciplinary notice.  Plaintiff admits that she had attended two social events that Home Depot hourly department heads attended and had communicated with hourly employees on work issues even when they were not working.  [DSMF ¶ 3].  Prior to attending one of the social events, Plaintiff had heard rumors that she and hourly department head Ron Seon had an inappropriate relationship.  [Pla. Dep. at 135-36].  Neither Plaintiff's pay nor her position was changed as a result of the discipline. [DSMF ¶ 2].

On July 11, 2012, after an investigation in which she was interviewed twice and provided a written statement, Plaintiff received a progressive disciplinary notice for violating company standards.  [DSMF ¶ 4; Pla. Dep. at 132, 148-53, 173, Exs. 7, 8]. The disciplinary notice stated:

> Tiena instructed manual credit be given for past due web-based forklift curriculum that had not been completed.  Instead of validating the training completion, she gave instruction to the lift trainer to proceed with the lift certification process.  Once made aware the training was

8

incomplete, she failed to confiscate the lift license from the associate further creating a safety risk.

[DSMF ¶ 4; Pla. Dep., Ex. 8].  With respect to the July 11, 2012 discipline, Plaintiff agrees that as the Operations Assistant Manager it was her responsibility to validate that training was properly completed and that the two forklift drivers who appeared on the overdue report reported to her.   [DSMF ¶ 5; Pla. Dep. at 149, 153, 154, Ex. 8].  Plaintiff also agrees that, although she had spoken about the matter with Ron Seon and an employee named Cindy, both of whom were hourly associates at the time, she could not validate that the drivers had completed the necessary training.  [DSMF ¶ 5; Pla. Dep. at 148-49, Ex. 8].  According to Plaintiff, she told Cindy, "[T]hese two people I was told completed this training . . . and as far as I know they completed it because they've been driving."  [DSMF ¶ 6; Pla. Dep. at 159, Ex. 8].  However, Plaintiff truthfully told the investigators, "I didn't have anything to show that the classes were complete" and that it was "possible" that Ron Seon certified the drivers without verifying the training.  [DSMF ¶ 6; Pla. Dep. at 157-58, Ex. 8].

Plaintiff testified that on the day the incident addressed in the July 11, 2012, discipline took place, she had to leave work in order to go to dialysis.  [DSMF ¶ 7; Pla. Dep. at 145].  Prior to leaving, Plaintiff informed Cindy to talk to both of the forklift

9

drivers when they arrived at work.  [DSMF ¶ 7; Pla. Dep. at 145-46].  Plaintiff said to Cindy, "If they have not completed that testing, their classes, go ahead and let them redo it, but you're going to need to take their license."  [Id.].  Plaintiff testified that she was disciplined for failing to confiscate the lift licenses.  [Pla. Dep. at 146, Ex. 8].  The safety violation for which Plaintiff received the July 11, 2012, disciplinary notice was considered a Major Work Rule violation and warranted termination.  [DSMF ¶ 8].  However, Plaintiff's employment was not terminated and her pay and position did not change.  [Id.].

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 31, 2012.  [DSMF ¶ 24; Pla. Dep. at 233, 236; Doc. 36, Ex. 5].  In the charge, Plaintiff checked the boxes marked "race," "sex," "retaliation," and "disability."  [Doc. 36, Ex. 5].  Plaintiff alleged that beginning around September 2011 she had "been denied the reasonable accommodations of not being scheduled at times when I must attend doctor's appointments and not being provided a relief during long shifts . . . ."  [Id.].  Plaintiff also wrote, "On April 11, 2012, I received a counseling.  Around that time, I complained that I felt that I was discriminated against.  On July 11, 2012, I received a final warning."  [Id.].

10

Plaintiff's job duties as an Operations Assistant Manager included having responsibility for the store's security.  [DSMF ¶ 9].  In particular, as the closing manager, Plaintiff was responsible for walking the interior of the store to make sure that all the doors and gates were locked.  [Id.].  She agrees it was the closing manager's responsibility to ensure that someone had locked the gates.  [Id.].  On multiple occasions while working as the closing manager, Plaintiff allowed the head cashier to lock the front garden gate without checking to see if it was locked afterwards.  [DSMF ¶ 10].  Plaintiff testified that all of the other managers did this as well.  [Id.].  However, Plaintiff acknowledges that the other managers "closed on different nights" and that she would not have been present with other managers when they were closing.  [Id.].

When a Store Manager learns of a possible failure to secure the store or other security breach by a closing manager, the Store Manager must report the issue to Asset Protection for review and investigation.  [DSMF ¶ 11].  An Asset Protection Manager then investigates and either reports a finding of a violation or takes no action if he or she is unable to determine whether a violation occurred.  [DSMF ¶ 23].  In connection with Plaintiff's work as a closing manager, Asset Protection Manager Philip Peters was notified of Plaintiff's possible failure to secure a gate at the Lawrenceville store on two occasions, one in July 2012 and one in August 2012.  [DSMF ¶ 12; Peters Dec. ¶ 4].

11

Peters reviewed store surveillance video and ADT data regarding the two separate incidents and confirmed that: Plaintiff was the closing manager on both occasions; she failed to walk the outside garden area for security at closing; and the gate had been found unlocked the next morning.  [Id.].  Peters reported his findings to the AACG, which reviewed the information and contacted Plaintiff shortly after the August 2012 violation.  [DSMF ¶ 13].

An AACG employee called Plaintiff to investigate the August incident.  Plaintiff testified to the following regarding a telephone conversation she had with the AACG employee: "He asked me did I go by and double-check that [the cashier] locked it, and my response to him was I don't remember.  He said, we have it on video you didn't. And I said, if you have it on video, I guess I didn't."  [DSMF ¶ 14; Pla. Dep. at 183]. Plaintiff testified that she is suspicious that Store Manager Aaron Seay found the garden gate unlocked "[b]ecause I felt like Aaron was on a witch-hunt against me, and I feel like – I just don't feel like he actually found that gate unlocked. I feel like he unlocked it."  [DSMF ¶ 15; Pla. Dep. at 188].  Plaintiff was asked and testified to the following:

> Q. Whether [Seay] found it unlocked or not, though, you agree that on that particular incident you did not personally check that night?
> A. No, I didn't.

12

[DSMF ¶ 15; Pla. Dep. at 188-89].  Plaintiff also testified: "I don't believe the gate was left unlocked and, no, I did not look at it but I don't believe that it was left unlocked. . . .  I closed the building without ensuring that – those exits, I did not look at those."[2] [DSMF ¶ 16; Pla. Dep. at 194-95].  After the AACG completed its investigation, it recommended that Plaintiff's employment be terminated.   Store Manager Seay terminated Plaintiff's employment on August 10, 2012.  [DSMF ¶ 18; Seay Dec. ¶¶ 6-9; Peters Dec. ¶ 4; Hudson Dec. ¶¶ 6-8].

Plaintiff filed a charge of discrimination with the EEOC on October 30, 2012. [DSMF ¶ 24; Pla. Dep. at 233, 236; Doc. 36, Ex. 6].  In the charge, Plaintiff stated that she had filed a prior EEOC charge on July 31, 2012, and that she had been discharged on August 10, 2012.  [Doc. 36, Ex. 6].  Plaintiff checked the box marked "retaliation" and alleged, "I believe I have been discriminated against in retaliation for opposing unlawful employment practices . . . ."  [Id.].

Additional facts will be set forth as necessary during discussion of Plaintiff's claims.

─────────────────

[2] Plaintiff admits that after her termination she truthfully told the EEOC the following: "That night I checked the internal doors three times and forgot to check that one gate.  I knew my manager was opening and was trying to ensure that I got everything done because I know he was looking for a reason to fire me."  [DSMF ¶ 17; Pla. Dep. at 262, Ex. 24].

13

## III.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (amended 2010).  Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  See Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).

The movant bears the initial burden of asserting the basis of his motion, and that burden is a light one.  See Celotex, 106 S. Ct. at 2553.  The movant is not required to negate his opponent's claim.  See id.  Rather, the movant may discharge this burden merely by "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Id. at 2554.

14

When evaluating a motion for summary judgment, the court must view the evidence and factual inferences in the light most favorable to the nonmoving party. See Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). Instead, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007) (citing Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)).

The court will apply these standards in ruling on Defendant's motion for summary judgment.

## IV. Discussion

Plaintiff Tiena James alleges that Defendant Home Depot subjected her to unlawful retaliation and discrimination on the basis of race, gender, and disability.[3] [Doc. 1]. Plaintiff asserts that Defendant subjected her to disparate discipline, failed

---

[3]Plaintiff alleges in her response brief that Defendant discriminated against her on the basis of her age. [Doc. 39]. The court, however, will not consider any arguments or allegations related to age discrimination because Plaintiff did not assert such a claim in her complaint. [Doc. 1].

15

to accommodate her disability, and terminated her employment in violation of Title VII and the ADA. [Id.]. Defendant argues that summary judgment is warranted on all of Plaintiff's claims. [Doc. 36].

### A.   Discriminatory Discipline

Plaintiff alleges that Defendant Home Depot subjected her to discriminatory treatment based on race, gender, and disability in violation of Title VII and the ADA when the company issued disciplinary notices to her on April 11, 2012, and July 11, 2012. [Doc. 1, Counts I, II, III; Doc. 39 at 4-6]. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability" in any of the "terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a).[4] The plaintiff carries the burden of proof of demonstrating that the

---

[4]The ADA Amendments Act of 2008 ("ADAAA"), P.L. 110-325, effective January 1, 2009, made significant changes to the law governing application of the Act, particularly making changes to the threshold standard for determining whether an ADA plaintiff is disabled as interpreted in Toyota Motor Mfg., Kentucky, Inc. v. Williams, 122 S. Ct. 681 (2002), and Sutton v. United Air Lines, Inc., 119 S. Ct. 2139 (1999). "Because the critical events in this case . . . took place after the ADAAA went into effect, we apply the post-ADAAA version of the ADA." Mazzeo v. Color Resolutions

16

defendant has unlawfully discriminated against her.  See Texas Dep't of Community Affairs v. Burdine, 101 S. Ct. 1089, 1093-95 (1981).  In a circumstantial evidence case, such as that herein, the allocation of burdens and order of presentation of proof are as follows: (1) the plaintiff has the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence; (2) if the plaintiff proves the *prima facie* case, the court will presume discriminatory intent, and the burden (of production) then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action taken against the employee; and (3) if the defendant carries this burden, the presumption of discrimination is eliminated, and the plaintiff has an opportunity to prove by a preponderance of the evidence that the legitimate reason offered by the defendant was a pretext for discrimination.  See McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817, 1824-25 (1973).[5]

To establish a *prima facie* case of disparate treatment based on Title VII, Plaintiff must prove that: (1) she is a member of a protected class; (2) she was

---

Int'l, LLC, 746 F.3d 1264, 1267 (11th Cir. 2014).

[5]"Despite the changes brought about by the ADAAA, courts still utilize the same McDonnell Douglas burden-shifting analysis used in ADA and Title VII cases." Beatty v. Hudco Industrial Products, Inc., 881 F. Supp. 2d 1344, 1351 (N.D. Ala. 2012).

17

subjected to an adverse employment action; (3) she was qualified to do the job; and (4) her employer treated similarly situated employees outside her classification more favorably.  See Lathem v. Dep't of Children and Youth Servs., 172 F.3d 786, 792 (11th Cir. 1999); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  "To establish a *prima facie* case of employment discrimination under the ADA, a plaintiff must show that, at the time of the adverse employment action, [she] had a disability, [she] was a qualified individual, and [she] was subjected to unlawful discrimination because of [her] disability."  Mazzeo, 746 F.3d at 1268 (citing Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255-56 (11th Cir. 2007).  Thus, both Title VII and the ADA require a plaintiff to show that she suffered an adverse employment action.  Although Plaintiff seeks to bring disparate treatment claims based on the disciplinary notices issued to her in April and July 2012, Defendant argues that Plaintiff is unable to establish a *prima facie* case under either statute because the notices did not rise to the level of adverse employment actions.  [Doc. 36 at 10-11].  The undersigned agrees.

In order to survive a summary judgment challenge, Plaintiff must offer evidence showing that the complained-of employment actions were materially adverse.  "[O]nly those employment actions that result in 'a *serious and material* change in the terms, conditions, or privileges of employment' will suffice."  Howard v. Walgreen Co., 605

18

F.3d 1239, 1245 (11th Cir. 2010) (quoting <u>Davis v. Town of Lake Park, Florida</u>, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original)).  "Although [Title VII] does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment."  <u>Davis</u>, 245 F.3d at 1239.  The Eleventh Circuit, like most courts that have addressed the issue, has found that "criticisms of an employee's job performance–written or oral–that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit."  <u>Id.</u> at 1241.

In the present case, Plaintiff was issued disciplinary notices on April 11, 2012, and July 11, 2012.  [DSMF ¶¶ 2, 4; Pla. Dep. at 122, 125, 132, 148-53, 173, Exs. 6-8].  Both notices asserted that Plaintiff had violated company standards and warned that further infractions could result in termination.  [<u>Id.</u>].  However, Plaintiff was not terminated or suspended as a result of the disciplinary notices, and neither her pay nor her position was changed in any way.  [DSMF ¶¶ 2, 8].  The Eleventh Circuit has addressed similar disciplinary actions and concluded that they did not constitute adverse employment actions.  <u>See</u> <u>Barnett v. Athens Regional Med. Ctr. Inc.</u>, 550 Fed. Appx. 711, 713 (11th Cir. 2013) (finding that two written reprimands were not adverse employment actions because, *inter alia*, they "did not result in [plaintiff's] termination,

19

demotion, suspension, a reduction in pay, or a change in job duties"); Embry v. Callahan Eye Foundation Hospital, 147 Fed. Appx. 819, 828-29 (11th Cir. 2005) (holding that plaintiff "failed to cite to evidence showing that this reprimand resulted in her suffering any tangible consequences in the form of loss of pay or benefits, and it, thus, was not an adverse employment action") (citation and internal quotation marks omitted); Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1283-84 (11th Cir. 1999) (per curiam). Because Plaintiff James is unable to show that the disciplinary notices issued in April and July 2012 were materially adverse, the undersigned finds that she cannot establish a *prima facie* case of discrimination based on race, gender, or disability.

Even if Plaintiff could establish that the disciplinary notices rose to the level of adverse employment actions, summary judgment would still be warranted. With regard to Plaintiff's disability discrimination claim, she cannot establish a *prima facie* case because she has offered no evidence that would permit a reasonable factfinder to conclude that Defendant Home Depot issued the disciplinary notices because of her disability. See Mazzeo, 746 F.3d at 1268. Plaintiff was never disciplined for missing scheduled work time due to dialysis, and, when she talked with Store Manager Aaron

20

Seay about a need to change her schedule for a doctor's appointment, he never refused to do that.  [DSMF ¶¶ 36, 43; Pla. Dep. at 98-99].

There is also a lack of evidence supporting Plaintiff's race and gender discrimination claims.  As noted *supra*, to establish a *prima facie* case, Plaintiff is required to show that Defendant treated similarly situated employees outside her racial and gender classifications more favorably.  The Eleventh Circuit has held, "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (citing Silvera v. Orange County School Bd., 244 F.3d 1253, 1259 (11th Cir. 2001)).  The "'quantity and quality of the comparator's misconduct'" must also be nearly identical.  Burke-Fowler v. Orange County, Florida, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)).  There is no evidence properly before the court identifying employees outside Plaintiff's classifications, who were in nearly identical positions and who engaged in misconduct nearly identical to Plaintiff, yet were not issued disciplinary notices.

Moreover, Plaintiff's own statements indicate that she believed that the mistreatment she received from Store Manager Aaron Seay was due to personal

AO 72A
(Rev.8/82)

conflicts rather than animus based on race, gender, or disability. Plaintiff testified that she believed the Seay treated her poorly because "store associates liked [her] more than him." [DSMF ¶ 20; Pla. Dep. at 110-11, 276, Ex. 27]. Plaintiff also admits that she cannot recall Seay ever saying anything inappropriate about her race, gender, dialysis, or any other issue. [DSMF ¶ 19; Pla. Dep. at 92]. Given the fact that Plaintiff has failed to present any evidence that would permit a reasonable jury to find that Defendant issued the disciplinary notices because of Plaintiff's race, gender, or disability, the court finds that these claims must be dismissed.

Assuming *arguendo* that Plaintiff were able to establish a *prima facie* case of discrimination based on gender, race, or disability, the burden of production would then shift to Defendant to articulate some legitimate, nondiscriminatory reason for issuing the disciplinary notices in April and July 2012. See Combs v. Plantation Patterns, 106 F. 3d 1519, 1528 (11th Cir. 1997) (citing McDonnell Douglas, 93 S. Ct. at 1824; Burdine, 101 S. Ct. at 1094). "'[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus.'" Id. (quoting Burdine, 101 S. Ct. at 1096) (emphasis in original). If the employer is able to meet this burden of production, "the presumption

of discrimination created by the <u>McDonnell Douglas</u> framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'" <u>Combs</u>, 106 F.3d at 1528 (quoting <u>Burdine</u>, 101 S. Ct. at 1094-95 & n.10).  The plaintiff then "has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." <u>Holifield</u>, 115 F.3d at 1565 (citing <u>McDonnell Douglas</u>, 93 S. Ct. at 1825).  "'[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason' as long as 'the reason is one that might motivate a reasonable employer.'" <u>Pennington v. City of Huntsville</u>, 261 F.3d 1262, 1267 (11th Cir. 2001) (citation omitted).

In the present case, Defendant Home Depot has offered legitimate, nondiscriminatory reasons for issuing the disciplinary notices in April and July 2012 and Plaintiff has failed to show that these reasons are pretexts for unlawful discrimination. The April 2012 progressive disciplinary notice stated that Plaintiff had engaged in conduct that violated company standards.  [DSMF ¶ 2; Pla. Dep. at 122, 125, Ex. 6].  The disciplinary notice read:

> On multiple occasions, Tiena met socially with hourly associates outside the workplace potentially creating a negative impression of the leadership in the store.  Additionally, she communicated via text message and

personal phone with hourly associates regarding work related issues while they were off the clock, even after being advised by the Store Manager to cease.

[Id.].  Plaintiff acknowledges that she had engaged in the actions described in the April 2012 disciplinary notice.  [DSMF ¶ 3].  Moreover, prior to attending one of the social events, Plaintiff had heard rumors that she and hourly department head Ron Seon had an inappropriate relationship.  [Pla. Dep. at 135-36].

The July 2012 progressive disciplinary notice stated that Plaintiff had violated company standards regarding the training of forklift drivers.  [DSMF ¶ 4; Pla. Dep. at 132, 148-53, 173, Exs. 7, 8].  The disciplinary notice read:

Tiena instructed manual credit be given for past due web-based forklift curriculum that had not been completed.  Instead of validating the training completion, she gave instruction to the lift trainer to proceed with the lift certification process.  Once made aware the training was incomplete, she failed to confiscate the lift license from the associate further creating a safety risk.

[DSMF ¶ 4; Pla. Dep., Ex. 8].  Plaintiff acknowledges that as the Operations Assistant Manager it was her responsibility to validate that training was properly completed and that the two forklift drivers who appeared on the overdue report reported to her.  [DSMF ¶ 5; Pla. Dep. at 149, 153, 154, Ex. 8].  Plaintiff also agrees that, although she

24

had spoken with two hourly associates about the matter, she could not validate that the drivers had completed the necessary training.  [DSMF ¶ 5; Pla. Dep. at 148-49, Ex. 8].

In summary, Defendant has offered legitimate, nondiscriminatory reasons for issuing the two disciplinary notices.  According to Defendant, Plaintiff was given the notices because she engaged in conduct which amounted to violations of company standards.  Plaintiff, however, has failed to produce evidence which would allow a reasonable jury to find that Defendant's proffered reasons are pretexts for discrimination.  Therefore, even if Plaintiff were able to establish a *prima facie* case of discrimination with regard to the disciplinary notices issued in April and July 2012, the court nevertheless would find that summary judgment is warranted on Plaintiff's claims.

For all these reasons, the undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 36] be **GRANTED** on Plaintiff's claims of discriminatory discipline based on race, gender, and disability brought pursuant to Title VII and the ADA.

### B.     Retaliatory Discipline

Plaintiff James also asserts that the disciplinary notices of April and July 2012 were issued by Defendant Home Depot in retaliation for her prior complaints of

25

discrimination.  [Doc. 1, Count IV].  Plaintiff's complaint is not clear on the issue, but it appears that her retaliation claim is brought pursuant to both Title VII and the ADA. [Id.].  Title VII acts to shield employees from retaliation for certain protected practices. Specifically, the statute provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Similarly, the ADA provides that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]."  42 U.S.C. § 12203(a).  Because these two statutes are so similar in their language prohibiting retaliation, the Eleventh Circuit has held, "[W]e assess ADA retaliation claims under the same framework we employ for retaliation claims arising under Title VII."  Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997) (citing McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1075-77 (11th Cir. 1996)).  In University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2534 (2013), the Supreme Court held that a plaintiff bringing

26

a Title VII retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  The Eleventh Circuit has held that the burden-shifting framework set forth in <u>McDonnell Douglas</u> continues to apply after <u>Nassar</u>.  <u>See</u> <u>Mealing v. Georgia Dep't of Juvenile Justice</u>, 564 Fed. Appx. 421, 427 n.9 (11th Cir. 2014).

To establish a *prima facie* case of retaliation under Title VII or the ADA, the plaintiff must show that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action.  <u>See</u> <u>Mealing</u> 564 Fed. Appx. at 427; <u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008); <u>Stewart</u>, 117 F.3d at 1287.  The plaintiff "'need not prove the underlying claim of discrimination which led to [her] protest;' however, the plaintiff must have had a reasonable good faith belief that the discrimination existed."  <u>Holifield</u>, 115 F.3d at 1566 (quoting <u>Tipton v. Canadian Imperial Bank of Commerce</u>, 872 F.2d 1491, 1494 (11th Cir. 1989)).  "To establish causation for purposes of a Title VII retaliation claim, the plaintiff must prove that 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'"  <u>Taylor v.</u>

27

Cardiovascular Specialists, P.C., 4 F. Supp. 3d 1374, 1383 (N.D. Ga. 2014) (quoting

Nassar, 133 S. Ct. at 2533).

With regard to the first *prima facie* element–statutorily protected activity, the

evidence reveals that Plaintiff first filed a charge of discrimination with the EEOC on

July 31, 2012. [DSMF ¶ 24; Pla. Dep. at 233, 236; Doc. 36, Ex. 5]. This charge was

filed after both of the disciplinary notices had been issued; therefore, it cannot form the

basis of Plaintiff's retaliation claim based on the notices. Plaintiff, however, asserted

in the charge that shortly after she received the April 2012 disciplinary action, she

complained of discrimination. [Doc. 36, Ex. 5]. Although Plaintiff has not identified

what exactly she complained about at this time, the court will assume for purposes of

evaluating Defendant's summary judgment motion that Plaintiff's alleged complaint

in April 2012 constituted statutorily protected expression.

The second element in a *prima facie* case of retaliation requires Plaintiff to show

that she suffered an adverse employment action. See Mealing, 564 Fed. Appx. at 427.

As discussed *supra*, the undersigned has found that Plaintiff is unable to establish that

the disciplinary notices rose to the level of adverse employment actions for purposes

of her discrimination claims. This finding, however, is not dispositive on the issue of

whether the disciplinary notices constitute adverse employment actions for Plaintiff's

28

retaliation claim. "[T]he 'adverse action' test applied to retaliation claims is distinct from that applied to disparate treatment claims." Sharpe v. Global Security Int'l, 766 F. Supp. 2d 1272, 1291 (S.D. Ala. 2011). The Supreme Court has held that a plaintiff bringing a retaliation claim "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Railway Co. v. White, 126 S. Ct. 2405, 2415 (2006) (citations and internal quotation marks omitted). This standard for determining adverse actions in retaliation claims is "decidedly more relaxed" than that used in discrimination claims. Crawford, 529 F.3d at 973.

As previously discussed, the disciplinary notices issued in April and July 2012 did not lead to a demotion or suspension for Plaintiff and her pay was not affected. [DSMF ¶¶ 2, 8]. However, the notices stated that Plaintiff had violated company standards and warned that she could be terminated if she committed any further infractions. [DSMF ¶¶ 2, 4; Pla. Dep. at 122, 125, 132, 148-53, 173, Exs. 6-8]. In light of these facts, the court finds that the disciplinary notices would dissuade a reasonable employee from bringing a discrimination charge against the employer.

29

Therefore, Plaintiff is able to show that she suffered an adverse employment action in support of her retaliation claim.

To establish the final element of a *prima facie* case of retaliation, a plaintiff must offer evidence which would allow a reasonable factfinder to conclude that there was a causal connection between the protected activity and the adverse employment action. See Mealing, 564 Fed. Appx. at 427.  If an employer takes an adverse employment action against an employee shortly after becoming aware of the employee's protected expression, then the close temporal proximity between the two events "is generally sufficient for a plaintiff to establish but-for causation."   Abernathy v. Science Applications Int'l Corp., 2013 WL 6904089, at *1 (N.D. Ala. December 31, 2013) (citing Raspanti v. Four Amigos Travel, Inc., 266 Fed. Appx. 820, 823 (11th Cir. 2008) (noting that at summary judgment the plaintiff bringing an FLSA retaliation claim can satisfy the but-for causal relation element "if she can prove a 'close temporal proximity' between the time her employer learned about her protected activity and her discharge")); accord Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) ("The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.").  "The

30

shorter the period between the two events, the stronger the inference that the adverse action was improperly motivated; conversely, a long period of time between the protected conduct and adverse-employment action will negate an inference that the adverse action was caused by the protected expression." Johnson v. Auburn University, 403 F. Supp. 2d 1101, 1113-14 (M.D. Ala. 2005).

The court finds that Plaintiff is not able to establish a causal connection. There is no evidence that Plaintiff engaged in statutorily protected expression prior to the first disciplinary notice issued on April 11, 2012. Therefore, this adverse action cannot form the basis of Plaintiff's retaliation claim. With regard to the July 11, 2012, disciplinary notice, Plaintiff asserted that she complained of discrimination three months prior, around April 11, 2012, shortly after she was issued the first disciplinary notice. [DSMF ¶¶ 2, 4; Pla. Dep. at 122, 125, 132, 148-53, 173, Exs. 6-8; Doc. 36, Ex. 5]. In Clark County School Dist. v. Breeden, 121 S. Ct. 1508, 1511 (2001), the Supreme Court stated that "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action . . . must be 'very close[.]'" The Eleventh Circuit has noted that the Supreme Court in Breeden, 121 S. Ct. at 1511, "cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection." Higdon v. Jackson, 393 F.3d

31

1211, 1220 (11ᵗʰ Cir. 2004).  The court finds that three month disparity in the present case is not sufficiently close to establish a causal link.

Furthermore, even if the court were to find that Plaintiff could establish a *prima facie* case of retaliation on the basis of her July 2012 disciplinary notice, summary judgment would be justified.  As previously discussed, Defendant has offered a legitimate, nondiscriminatory reason for issuing the disciplinary notice, namely, that Plaintiff engaged in conduct which amounted to a violation of company standards. Plaintiff failed to confiscate the lift licenses of two forklift drivers even though she could not validate that the drivers had completed the necessary training and she "didn't have anything to show that the classes were complete."  [DSMF ¶¶ 5, 6; Pla. Dep. at 149, 153-58, Ex. 8].  The safety violation for which Plaintiff received the July 11, 2012, disciplinary notice was considered a Major Work Rule violation.  [DSMF ¶ 8]. Although Plaintiff's violation was the legitimate, nondiscriminatory reason offered by Defendant for issuing the notice, Plaintiff has failed to produce evidence which would allow a reasonable jury to find that Defendant's proffered reason is pretextual.  For these reasons, the undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 36] be **GRANTED** on Plaintiff's claim of retaliatory discipline brought pursuant to Title VII and the ADA.

32

###### C.     Discriminatory Termination

Plaintiff James' next claim is that Defendant Home Depot terminated her employment on the basis of her race, gender, and disability.  Plaintiff's discriminatory termination claim is brought pursuant to Title VII and the ADA.  [Doc. 1, Counts I, II, III].  Plaintiff was terminated after an investigation allegedly found that while working as the closing manager, she had failed to secure a gate on two occasions, one in July 2012 and one in August 2012.  [DSMF ¶ 12; Peters Dec. ¶ 4].  Store Manager Aaron Seay terminated Plaintiff's employment on August 10, 2012.  [DSMF ¶ 18; Seay Dec. ¶¶ 6-9; Peters Dec. ¶ 4; Hudson Dec. ¶¶ 6-8].

Defendant argues, and the court agrees, that Plaintiff's claim of discriminatory termination on the basis of race, gender, and disability cannot survive summary judgment because she did not exhaust her administrative remedies prior to filing suit. [Doc. 36 at 15-16].  "Before filing suit under Title VII [or] the ADA, . . . a plaintiff must exhaust the available administrative remedies by filing a charge with the EEOC." Anderson v. Embarq/Sprint, 379 Fed. Appx. 924, 926 (11th Cir. 2010) (citing, *inter alia*, 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a)).  The Eleventh Circuit has held that a "'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"

33

Gregory v. Georgia Dep't of Human Resources, 355 F.3d 1277, 1280 (11th Cir. 2004) (citations omitted); accord Eastland v. Tennessee Valley Auth., 714 F.2d 1066, 1067 n.9 (11th Cir. 1983) ("The starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation."); Waldemar v. American Cancer Soc'y, 971 F. Supp. 547, 553 (N.D. Ga. 1996) ("Claims omitted from the EEOC charge may still be litigated when 'reasonably related' to those claims brought in the EEOC charge."); Plaisance v. Travelers Ins. Co., 880 F. Supp. 798, 806 (N.D. Ga. 1994) ("[T]he scope of a complaint is not to be extended beyond the scope of the 'EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'") (citation omitted).  Thus, "[i]f not reasonably related, the court is precluded from considering claims not raised in the EEOC complaint." Waldemar, 971 F. Supp. at 553.

The reason for this rule is that under the statutory scheme of Title VII, the EEOC is given the first opportunity to investigate the alleged discrimination and attempt to achieve voluntary compliance.  See Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970).  "Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action. . . ." Id.  It is also critical to the process that the employer receive timely notice of the basis of the claims of discrimination.

34

Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 878 (5th Cir. 2003) ("One of the central purposes of the employment discrimination charge is to put employers on notice of 'the existence and nature of the charges against them.'") (quoting EEOC v. Shell Oil Co., 104 S. Ct. 1621, 1635 (1984)); see also White v. Wells Fargo Guard Servs., 908 F. Supp. 1570, 1580 (M.D. Ala. 1995). Thus, raising a claim at the administrative level is a condition precedent to filing suit on the claim. See Mulhall v. Advance Security, Inc., 19 F.3d 586, 589 n.8 (11th Cir. 1994); Thomas v. Alabama Council on Human Relations, Inc., 248 F. Supp. 2d 1105, 1115 (M.D. Ala. 2003) ("Thus, if a plaintiff fails to file an EEOC charge before the 180-day limitations period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies.").

In the present case, Plaintiff filed one charge of discrimination with the EEOC after her termination. The charge was filed on October 30, 2012, and the only adverse employment action referenced therein was Plaintiff's termination which occurred on August 10, 2012. [Doc. 36, Ex. 6]. In the charge, Plaintiff checked the box marked "retaliation," but she did not check any other boxes. [Id.]. She alleged in the narrative portion of the charge that she was told by her manager that she "was discharged for leaving a garden gate unlocked." [Id.]. Plaintiff stated that the earliest and latest dates

35

of discrimination were August 10, 2012, and she alleged that she had been discharged on that date.  [Id.].  Plaintiff also wrote, "I believe I have been discriminated against in retaliation for opposing unlawful employment practices . . . ."  [Id.].

While Plaintiff alleged retaliatory termination in the EEOC charge, she made no allegation that her termination was based on race, gender, disability, or any other protected classification.  [Doc. 36, Ex. 6].  Because Plaintiff failed to exhaust her administrative remedies, she is barred from bringing claims of discriminatory termination.  The undersigned, therefore, **RECOMMENDS** that Defendant's motion [Doc. 36] for summary judgment be **GRANTED** on Plaintiff's claims of discriminatory termination based on race, gender, and disability.[6]

### D.    Retaliatory Termination

Plaintiff James alleges that Defendant Home Depot terminated her employment in retaliation for prior complaints of discrimination in violation of Title VII and the ADA.  [Doc. 1, Count IV].  As previously discussed, a plaintiff can establish a *prima facie* case of retaliation under Title VII or the ADA by showing that (1) she engaged

_____

[6]Even if Plaintiff had asserted in the charge that her termination was the result of discrimination, and not just retaliation, the court would still recommend that summary judgment be granted because, as discussed *infra*, Defendant has offered a legitimate, nondiscriminatory reason for the termination decision and Plaintiff has not offered evidence of pretext.

36

in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. See Mealing 564 Fed. Appx. at 427; Crawford, 529 F.3d at 970; Stewart, 117 F.3d at 1287. Plaintiff engaged in protected expression when she filed a charge of discrimination with the EEOC on July 31, 2012, and she was subjected to an adverse employment action when she was fired by Store Manager Aaron Seay less than two weeks later on August 10, 2012. [DSMF ¶¶ 18, 24; Pla. Dep. at 233, 236; Doc. 36, Ex. 5; Seay Dec. ¶¶ 6-9]. Given the close temporal proximity between Plaintiff's complaint and the subsequent termination, the court finds that a reasonable jury could conclude that Plaintiff has established the causal connection *prima facie* element. See Higdon, 393 F.3d at 1220 ("We have held that a period as much as one month between the protected expression and the adverse action is not too protracted.") (citing Wideman v. Wal–Mart Stores, Inc., 141 F.3d 1453, 1457 (11th Cir. 1998)); Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) ("The charge was made May 19, 1995 and Farley was fired seven weeks later on July 10, 1995. We find this timeframe sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case."); Berman v. Orkin Exterminating Co., Inc., 160 F.3d 697, 702 (11th Cir. 1998) (holding a causal connection because "the first transfer

37

occurred within five weeks after Berman had filed his EEOC charge and both transfers occurred within a couple of months of the complaint"); Hubbard v. Georgia Farm Bureau Mut. Ins. Co., 2013 WL 3964908, at *2 (M.D. Ga. July 31, 2013) ("The temporal proximity between Plaintiff's report of sexually offensive conduct on November 12, 2008, and her abrupt termination only three weeks later on December 4, 2008, satisfies the 'very close' standard necessary to establish 'but-for' causation."). Therefore, Plaintiff is able to establish a *prima facie* case of retaliatory termination.

The burden of production then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. See Combs, 106 F. 3d at 1528 (citing McDonnell Douglas, 93 S. Ct. at 1824; Burdine, 101 S. Ct. at 1094). Defendant asserts that Plaintiff was fired because, while working as a closing manager at the Lawrenceville store, she failed to ensure that a gate was locked. [DSMF ¶ 9]. After Asset Protection Manager Philip Peters was notified of Plaintiff's possible failure to secure a gate on two occasions, one in July 2012 and one in August 2012, he reviewed store surveillance video and ADT data regarding the two incidents. [DSMF ¶ 12; Peters Dec. ¶ 4]. Peters confirmed that: Plaintiff was the closing manager on both occasions; she failed to walk the outside garden area for security at closing; and the gate had been found unlocked the next morning. [Id.]. Peters reported his findings

38

to the AACG, which reviewed the information and contacted Plaintiff. [DSMF ¶ 13].

Plaintiff testified to the following regarding a telephone conversation she had with an

AACG employee who called to investigate the August incident: "He asked me did I

go by and double-check that [the cashier] locked it, and my response to him was I

don't remember. He said, we have it on video you didn't. And I said, if you have it

on video, I guess I didn't." [DSMF ¶ 14; Pla. Dep. at 183]. After the AACG

completed its investigation, it recommended that Plaintiff's employment be terminated.

Store Manager Seay terminated Plaintiff's employment on August 10, 2012. [DSMF

¶ 18; Seay Dec. ¶¶ 6-9; Peters Dec. ¶ 4; Hudson Dec. ¶¶ 6-8]. Defendant has

obviously carried its "'exceedingly light'" burden of producing a legitimate,

nondiscriminatory reason for terminating Plaintiff's employment. Walker v.

NationsBank of Florida N.A., 53 F.3d 1548, 1556 (11th Cir. 1995) (quoting Perryman

v. Johnson Products Co., Inc., 698 F.2d 1138, 1142 (11th Cir. 1983)).

        As a result, as discussed *supra*, Plaintiff has the opportunity to show that

Defendant's proffered reason is a pretext for retaliation. See Holifield, 115 F.3d at

1565 (citing McDonnell Douglas, 93 S. Ct. at 1825). "[A] plaintiff may not in all cases

merely rest on the laurels of her *prima facie* case in the face of powerful justification

evidence offered by the defendant." Grigsby v. Reynolds Metals Co., 821 F.2d 590,

39

596 (11th Cir. 1987).  Plaintiff's demonstration of pretext merges with her "ultimate burden of showing that the defendant intentionally discriminated against the plaintiff." Holifield, 115 F.3d at 1565 (citing St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2749 (1993)).  The court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct[.]'" Combs, 106 F.3d at 1538 (quoting Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir. 1994)).  Plaintiff "'may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Jackson v. State of Alabama State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting Burdine, 101 S. Ct. at 1095).  In order to establish pretext through the indirect method, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." McCann v. Tillman, 526 F.3d 1370, 1375-76 (11th Cir. 2008) (citations and internal quotation marks omitted).  Plaintiff is unable to offer such evidence.

40

Plaintiff testified that she does not believe that Store Manager Seay found the garden gate unlocked.  Instead, she "feel[s] like he unlocked it."  [DSMF ¶ 15; Pla. Dep. at 188].  Plaintiff, however, acknowledges that she is unable to offer any evidence in support of this belief.  Moreover, Plaintiff admitted during her deposition testimony that on the night in question, she did not personally check the garden gate even though she was the closing manager.  [DSMF ¶ 15; Pla. Dep. at 188-89].  Plaintiff testified: "I don't believe the gate was left unlocked and, no, I did not look at it but I don't believe that it was left unlocked. . . .  I closed the building without ensuring that – those exits, I did not look at those."  [DSMF ¶ 16; Pla. Dep. at 194-95].  Plaintiff also admits that after her termination she truthfully told the EEOC the following: "That night I checked the internal doors three times and forgot to check that one gate."  [DSMF ¶ 17; Pla. Dep. at 262, Ex. 24].  The court finds that Plaintiff has not pointed to any evidence which would "permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct[.]'"  Combs, 106 F.3d at 1538 (quoting Cooper-Houston, 37 F.3d at 605).

In addition, as noted *supra*, a plaintiff bringing a retaliation claim must show that "her protected activity was a but-for cause of the alleged adverse action by the employer."  Nassar, 133 S. Ct. at 2534.  Plaintiff, however, testified that she believes

41

that she was "forced out" by Store Manager Seay, not because of her protected activity, but because of her popularity with associates.  [DSMF ¶ 20; Pla. Dep. at 110-11, 276, Ex. 27].  For all these reasons, it is **RECOMMENDED** that Defendant's summary judgment motion [Doc. 36] be **GRANTED** on Plaintiff's retaliatory termination claim.

### E.    Failure to Accommodate

Plaintiff's final claim is that Defendant violated the ADA by failing to accommodate her disability.  [Doc. 1 ¶ 44].  As discussed *supra*, the ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability . . . ." 42 U.S.C. § 12112(a); see also Wascura v. City of South Miami, 257 F.3d 1238, 1242 (11th Cir. 2001).  The definition of "discriminate" includes a failure to make reasonable accommodations to the limitations of that individual with a disability. See 42 U.S.C. § 12112(b)(5)(A) ("the term 'discriminate against a qualified individual on the basis of disability' includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity").  Although the McDonnell Douglas burden-shifting framework is generally used by courts to evaluate disability

42

discrimination claims under the ADA, the Eleventh Circuit has held that the framework is not applicable to ADA claims alleging a failure to make reasonable accommodations.  See Nadler v. Harvey, 2007 WL 2404705, at *8 (11th Cir. August 24, 2007) ("An employer *must* reasonably accommodate an otherwise qualified employee with a *known* disability unless the accommodation would impose an undue hardship in the operation of the business. . . . Thus, applying McDonnell Douglas to reasonable accommodation cases would be superfluous, since there is no need to prove discriminatory motivation.") (emphasis in original); see also Holly, 492 F.3d at 1262 (holding that in an ADA failure to accommodate case, there are no additional burdens on defendant to show that it had a legitimate nondiscriminatory reason for terminating plaintiff or on plaintiff to establish that defendant's proffered reasons were pretextual); Jones v. Georgia Dep't of Corrections, 2008 WL 779326, at *6 (N.D. Ga. March 18, 2008) ("The Eleventh Circuit came to the logical conclusion that the McDonnell Douglas test does not apply to reasonable accommodation claims in [Nadler], but it inexplicably did not publish the opinion and provide trial courts with a clear answer to this previously unaddressed issue.").  To establish a *prima facie* case of disability-based discrimination under the ADA, a plaintiff must demonstrate that she: (1) has a disability as defined in the ADA, (2) is a "qualified individual," meaning that, with or

43

without reasonable accommodations, she can perform the essential functions of the job she holds; and (3) was discriminated against because of her disability. See Mazzeo, 746 F.3d at 1268 (citing Holly, 492 F.3d at 1256); Greenberg v. BellSouth Telecommunications, Inc., 498 F.3d 1258, 1263 (11th Cir. 2007); Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (11th Cir. 1998).

Plaintiff has a health condition that requires dialysis, and she is able to perform the essential functions of her former position as an Operations Assistant Manager. The court, therefore, will assume that Plaintiff is able to satisfy the first two *prima facie* elements. Defendant makes no argument to the contrary. The final element requires Plaintiff to establish that she was discriminated against because of her disability. See Mazzeo, 746 F.3d at 1268 (citing Holly, 492 F.3d at 1256); Greenberg, 498 F.3d at 1263. Plaintiff claims that she requested a reasonable accommodation for her disability and that Defendant discriminated against her under the ADA when it failed to provide her with that reasonable accommodation. The court finds that Plaintiff has failed to present sufficient evidence to create a genuine issue of fact on this claim.

"An employer impermissibly discriminates against a qualified individual when the employer does not reasonably accommodate the individual's disability." Anderson, 379 Fed. Appx. at 927. A "reasonable accommodation" may include "job

44

restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(b).  An employer is not required, however, to provide an employee with "'the maximum accommodation or every conceivable accommodation possible.'"  Stewart, 117 F.3d at 1285 (quoting Lewis v. Zilog, Inc., 908 F. Supp. 931, 947 (N.D. Ga. 1997)).  Furthermore, although the ADA lists types of possible accommodations, the fact that a particular accommodation may be included does not mean that such accommodation is automatically deemed "reasonable" under the statute.  See Terrell v. USAir, 132 F.3d 621, 624 (11th Cir. 1998).  The accommodation must also be reasonable based on the specific facts and circumstances of the case.  Id.; Stewart, 117 F.3d at 1285.  "An accommodation is 'reasonable' and necessary under the ADA only if it enables the employee to perform the essential functions of the job."  Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1259-60 (11th Cir. 2001).  "'In other words, the ADA does not require the employer to eliminate an essential function of the plaintiff's job.'"  Holly, 492 F.3d at 1256 (citation omitted).

45

"The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable." Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000); see also Stewart, 117 F.3d at 1286. Thus, "[t]he plaintiff bears the burden of identifying a reasonable accommodation that would allow a qualified individual to perform the job, and an employer is not required to accommodate an employee in any manner in which the employee desires." Gilliard v. Georgia Dep't of Corrections, 500 Fed. Appx. 860, 868 (11th Cir. 2012) (citing Stewart, 117 F.3d at 1285-86).

In early 2011, Plaintiff went on a medical leave of absence for an extended period and returned to work in June 2011 at the store in Lawrenceville, Georgia. [Pla. Dep. at 21-25]. Around the time of Plaintiff's return, she provided a doctor's note to Home Depot that stated, "Mrs. James is also preparing to start at home dialysis." [DSMF ¶ 42]. Plaintiff currently does home dialysis at night, but she did not do home dialysis while she worked for Home Depot, and she did not do the required training for at-home dialysis until after her Home Depot employment ended. [DSMF ¶ 41]. In 2012, while working at the Lawrenceville store, Plaintiff made the decision to switch from nocturnal dialysis appointments (which were from 9:00 p.m. to 3:30 a.m. or 4:00

46

a.m.) to daytime appointments (6:00 a.m. to noon or 1:00 p.m.) due to "personal reasons at home." [DSMF ¶ 29; Pla. Dep. at 62-65, 71-75]. Plaintiff had dialysis appointments Monday, Wednesday and Friday when she did daytime dialysis in 2012, and she was scheduled to work five days a week at the Lawrenceville store. [DSMF ¶ 40].

Plaintiff bases her failure to accommodate claim on the fact that there were "eight to ten" times Store Manager Aaron Seay did not schedule any coverage for Plaintiff to leave for a daytime dialysis appointment. [DSMF ¶ 27; Pla. Dep. at 73-74]. Plaintiff's scheduling concern was that she needed a manager on duty to be scheduled with her so that she could leave for dialysis and "go to my treatment and come back." [DSMF ¶ 31; Pla. Dep. at 76]. Plaintiff's schedule was not a problem when she "did nocturnal [dialysis], [she] left at night, so," it was only a concern while she was doing daytime dialysis. [DSMF ¶ 30]. Plaintiff testified that with respect to the daytime dialysis and scheduling problems, "[t]here were times after I started pointing out the fact that I needed coverage that I was starting to get that coverage." [DSMF ¶ 31; Pla. Dep. at 75].

The court finds that Plaintiff has failed to point to evidence showing that Defendant did not reasonably accommodate her disability. See Anderson, 379 Fed.

47

Appx. at 927.  According to Plaintiff's own testimony, when she talked to Store Manager Seay about the need to schedule another manager to come into work so that she could leave for dialysis, he did not refuse her request.  [Pla. Dep. at 81].  Instead, Seay told Plaintiff, "[W]ell, just call somebody else to come in."  [Id.].  Plaintiff also acknowledged that she was never subjected to any discipline for missing scheduled work time due to dialysis.  [DSMF ¶ 36; Pla. Dep. at 98-99].  In addition, Plaintiff admitted that Seay never told her that she could not leave or change her schedule for emergencies.  And when Plaintiff talked with Seay about a need to change her schedule for a doctor's appointment, he never refused to do that.  [DSMF ¶ 43; Pla. Dep. at 106].

A reasonable jury could not view these facts and conclude that Defendant refused to make reasonable accommodations to Plaintiff's limitations caused by her need for dialysis.  See 42 U.S.C. § 12112(b)(5)(A).  Plaintiff never had a scheduling problem when she was on nocturnal dialysis, and she only went to dialysis during the daytime due to personal preference.  Plaintiff apparently did not like calling other managers to work for her when she went to daytime dialysis, and, instead, she wanted Store Manager Seay to do all the scheduling.  However, as previously noted, "under the ADA a qualified individual with a disability is not entitled to the accommodation

48

of her choice, but only to a reasonable accommodation." <u>Stewart</u>, 117 F.3d at 1286 (citation and internal quotation marks omitted).   Seay provided Plaintiff with a reasonable accommodation when he permitted her to call other managers to cover for her when she was out.   Furthermore, even when Plaintiff experienced scheduling problems while on daytime dialysis, she was never disciplined in any way for missing work.   Because Plaintiff is unable to show that Defendant failed to make reasonable accommodations to her disability, the undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 36] be **GRANTED** on Plaintiff's ADA failure to accommodate claim [Doc. 1, Count III].

## V.   Conclusion

Based on the foregoing reasons and cited authority, the undersigned **RECOMMENDS** that the summary judgment motion [Doc. 36] filed by Defendant Home Depot be **GRANTED** on all of Plaintiff Tiena James' claims and that these claims be **DISMISSED WITH PREJUDICE**.

The undersigned **ORDERS** that Defendant's motion [Doc. 38] for leave to supplement its summary judgment motion with newly received evidence be **GRANTED**.

49

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 14-01 (N.D. Ga. August 15, 2014).  The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO ORDERED AND RECOMMENDED**, this 10th day of November, 2015.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

50