IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIENA JAMES,

             Plaintiff,

     v.

HOME DEPOT U.S.A., INC.,

             Defendant.

1:14-cv-1502-WSD

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Janet F. King's Final Report and Recommendation [43] ("R&R"). The R&R recommends the Court grant Defendant Home Depot U.S.A., Inc.'s ("Defendant" or "Home Depot") Motion for Summary Judgment [36].[1]

---

[1] When she filed her Complaint, Plaintiff was represented by Nancy B. Pridgen. On October 15, 2014, the Magistrate Judge entered an Order [10] granting Ms. Pridgen's Motion to Withdraw [7]. Plaintiff did not obtain new counsel, and she proceeds *pro se* in this action.

I.      **BACKGROUND**

A.      <u>Facts</u>[2]

1.      <u>Dialysis</u>

In 2005, Defendant hired Plaintiff Tiena James ("Plaintiff").  (Plaintiff's Deposition [36.3] ("Pl.  Dep.") at 20-21).  In December 2010, Plaintiff was promoted to the position of Operations Assistant Manager.  (<u>Id.</u> at 21-22).  As Operations Assistant Manager, Plaintiff was required to work on a flexible schedule and was on call even when not scheduled to work.  For instance, she sometimes would come into work at unscheduled hours to answer alarm calls. (Defendant's Statement of Material Facts [36.2] ("DSMF") ¶ 28; Pl.'s Dep. at 61-62).

In January 2011, Plaintiff became ill and was hospitalized.  (Pl.'s Dep. at 21-24).  At the time, Plaintiff worked at the Home Depot store in Suwanee, Georgia.  (<u>Id.</u>).  Plaintiff testified, "I went to go get a physical and found out my body was in chaos and they admitted me into the hospital."  (<u>Id.</u> at 22).  She went on a medical leave of absence for an extended period, and began receiving dialysis

---

[2]      The facts are taken from the R&R and the record.   The parties have not objected to any specific facts in the R&R, and the Court finds no plain error in them.   The Court thus adopts the facts set out in the R&R.   See <u>Garvey v. Vaughn</u>, 993 F.2d 776, 779 n.9 (11th Cir.  1993).

treatments.  (Id. at 21-24).  Plaintiff returned to work in June 2011 at a Home

Depot store in Lawrenceville.  (Id. at 23).  That same month, Plaintiff provided a

doctor's note to Home Depot that stated "Mrs. James is also preparing to start at

home dialysis."  (DSMF ¶ 42).  Plaintiff currently does home dialysis at night, but

she did not do dialysis at home while working for Home Depot.  She completed the

required training for home dialysis after her Home Depot employment ended.

(DSMF ¶ 41).

Plaintiff attended corporate office training for operations around June 2011.

(DSMF ¶ 1).  Plaintiff was familiar with the policies included in the employee

handbook and with Home Depot's 2009 Manager's Guide to the Code of Conduct.

(Id.).  Plaintiff also understood as a manager that she was responsible for

complying with the policies in the handbook and the Manager's Guide.  (Id.).  In

September 2011, Aaron Seay became Plaintiff's Store Manager.  (Seay Declaration

[36.4] ("Dec.") ¶ 2).

In 2012, while working at the Lawrenceville store, Plaintiff, as a personal

choice, switched from nocturnal dialysis appointments (which were from 9:00 p.m.

to 3:30 a.m. or 4:00 a.m.) to daytime appointments (6:00 a.m. to noon or 1:00

p.m.).[3]  Plaintiff testified that she made this decision due to "personal reasons at home."  (DSMF ¶ 29; Pl.'s Dep. at 62-65, 71-75).  Plaintiff testified that there were "eight to ten" times Mr. Seay did not schedule any coverage for Plaintiff to allow her to leave for a daytime dialysis appointment.  (DSMF ¶ 27; Pl.'s Dep. at 73-74).  Plaintiff needed a manager to be scheduled to be on duty with her so that she could leave for dialysis and "go to my treatment and come back." (DSMF ¶ 31; Pl.'s Dep. at 76).  Plaintiff's schedule was not a problem when she "did nocturnal [dialysis], [she] left at night, so," it was only a concern while she was doing daytime dialysis.  (DSMF ¶ 30).

Plaintiff had dialysis appointments Monday, Wednesday, and Friday when she did daytime dialysis in 2012.  (DSMF ¶ 40).  She was scheduled to work five days a week at the Lawrenceville store.  (Id.).  Plaintiff testified that, after she notified superiors that she needed managerial coverage, she "start[ed] to get that coverage."  (DSMF ¶ 31; Pl.'s Dep. at 75).  Plaintiff never was disciplined for missing scheduled work time because of her daytime dialysis treatments.  (DSMF ¶ 36; Pl.'s Dep. at 98-99).  Sometimes Plaintiff had to change her daytime dialysis appointments unexpectedly to arrange to get the treatments later in the day when

---

[3]     These treatments apparently were administered at a dialysis facility.

"their machines were acting up."  (DSMF ¶ 37).  Mr. Seay never told Plaintiff that she could not leave or change her schedule for emergencies, and, when she talked with him about a need to change her schedule for a doctor's appointment, he never refused to change Plaintiff's schedule.  (DSMF ¶ 43).[4]

### 2.   Company Standard Violations

On April 11, 2012, after an investigation conducted by Home Depot's Associate Advice and Counsel Group ("AACG"), Plaintiff received a progressive disciplinary notice for conduct in violation of company standards.  (DSMF ¶ 2; Pl.'s Dep. at 122, 125, Ex. 6).  The disciplinary notice stated:

> On multiple occasions, Tiena met socially with hourly associates outside the workplace potentially creating a negative impression of the leadership in the store.  Additionally, she communicated via text message and personal phone with hourly associates regarding work related issues while they were off the clock, even after being advised by the Store Manager to cease.

(Id.).  Plaintiff admitted she engaged in the conduct described in the April 11, 2012, disciplinary notice.  Plaintiff admits that she attended two social events that Home Depot hourly workers attended, and communicated with them on work issues outside of work.  (DSMF ¶ 3).  Prior to attending one of the social events,

---

[4]     There is no evidence that Plaintiff ever was disciplined when her dialysis appointments were moved to later in the day because of equipment problems.

Plaintiff heard rumors that she and hourly department head Ron Seon had an inappropriate personal relationship between them.  (Pl.'s Dep. at 135-36).  Neither Plaintiff's pay nor her position changed as a result of the April 11, 2012, discipline she received.  (DSMF ¶ 2).

On July 11, 2012, after another investigation in which Plaintiff was interviewed twice and provided a written statement, Plaintiff received a further progressive disciplinary notice for again violating company standards.  (DSMF ¶ 4; Pl.'s Dep. at 132, 148-53, 173, Exs. 7, 8).  The disciplinary notice stated:

> Tiena instructed manual credit be given for past due web-based forklift curriculum that had not been completed.  Instead of validating the training completion, she gave instruction to the lift trainer to proceed with the lift certification process.  Once made aware the training was incomplete, she failed to confiscate the lift license from the associate further creating a safety risk.

(DSMF ¶ 4; Pl.'s Dep., Ex.  8).  With respect to this July 11, 2012 discipline, Plaintiff agrees that, as the Operations Assistant Manager, she was responsible for validating that forklift training was properly completed and admitted that the two forklift drivers who appeared on the overdue training report reported to her. (DSMF ¶ 5; Pl.'s Dep. at 149, 153, 154, Ex. 8).  Plaintiff admits that, although she discussed this training deficiency with Ron Seon and an employee named Cindy, both of whom were hourly associates at the time, she did not validate that the drivers had completed the necessary training.  (DSMF ¶ 5; Pl.'s Dep. at 148-49,

6

Ex. 8).  According to Plaintiff, she told Cindy "these two people I was told completed this training . . . and as far as I know they completed it because they've been driving."  (DSMF ¶ 6; Pl.'s Dep. at 159, Ex. 8).  Plaintiff told the investigators that it is "possible" that Ron Seon certified the drivers without verifying the training, but that she "didn't have anything to show that the classes were complete."  (DSMF ¶ 6; Pl.'s Dep. at 157-58, Ex. 8).

Plaintiff testified that, on the day of the incident addressed in the July 11, 2012, discipline, she had to leave work to go to dialysis.  (DSMF ¶ 7; Pl.'s Dep. at 145).  Before she left, Plaintiff asked Cindy to talk to both of the forklift drivers when they arrived at work.  (DSMF ¶ 7; Pl.'s Dep. at 145-46).  Plaintiff told Cindy:  "If they have not completed that testing, their classes, go ahead and let them redo it, but you're going to need to take their license."  (Id.).  Plaintiff testified she was disciplined for failing to confiscate the lift licenses.  (Pl.'s Dep. at 146, Ex. 8).  The safety violation for which Plaintiff received the July 11, 2012, disciplinary notice was considered a Major Work Rule violation and warranted termination.  (DSMF ¶ 8).  Plaintiff's employment was not terminated and her pay and position did not change.  (Id.).

On July 31, 2012, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  (DSMF ¶ 24; Pl.'s Dep. at 233,

236; [36.7]).  In the charge, Plaintiff checked the boxes marked "race," "sex," "retaliation," and "disability" as the bases on which she was discriminated. ([36.7]).  Plaintiff alleged that, beginning around September 2011, she had "been denied the reasonable accommodations of not being scheduled at times when I must attend doctor's appointments and not being provided a relief during long shifts . . . ."  (Id.).  Plaintiff also alleged that, "[o]n April 11, 2012, I received a counseling.  Around that time, I complained that I felt that I was discriminated against.  On July 11, 2012, I received a final warning." (Id.).

Plaintiff's duties as an Operations Assistant Manager included responsibility for the store's security.  (DSMF ¶ 9).  As the closing manager, Plaintiff was responsible for walking the interior of the store to make sure all the doors and gates were locked.  (Id.).  She agrees it was the closing manager's responsibility to ensure that someone had locked the gates.  (Id.).  On multiple occasions while working as closing manager, Plaintiff allowed the head cashier to lock the front garden gate, and did not afterwards check to see if the gate was locked.  (DSMF ¶ 10).  Plaintiff testified that all of the other managers did this as well.  (Id.).  Plaintiff acknowledges that the other managers "closed on different nights" and that she was not present when other managers closed the store.  (Id.).  When a Store Manager learns of a possible failure to secure the store or other security

breach by a closing manager, the Store Manager must report the failure to Asset

Protection for review and investigation.  (DSMF ¶ 11).  An Asset Protection

Manager then investigates and either reports a finding of a violation or takes no

action if he or she is unable to determine whether a violation occurred.  (DSMF

¶ 23).  In connection with Plaintiff's work as a closing manager, Asset Protection

Manager Philip Peters was notified that Plaintiff failed, on two occasions, to secure

a gate at the Lawrenceville store on two occasions:  the first in July 2012 and the

second in August 2012.  (DSMF ¶ 12; Peters Dec. ¶ 4).

     Peters reviewed store surveillance video and ADT data regarding the two

store closing incidents and confirmed that (i) Plaintiff was the closing manager on

both occasions; (ii) she failed to walk the outside garden area at closing to ensure it

was secure; and (iii) the gate was found unlocked the next morning.  (Id.).  Peters

reported his findings to the AACG, which reviewed the information, and they

contacted Plaintiff shortly after the August 2012 violation investigation.  (DSMF

¶ 13).

     Plaintiff testified about a telephone conversation she had with the AACG

employee investigating the matter.  She stated:  "He asked me did I go by and

double-check that [the cashier] locked it, and my response to him was I don't

remember.  He said, we have it on video you didn't.  And I said, if you have it on

9

video, I guess I didn't."  (DSMF ¶ 14; Pl.'s Dep. at 183).  Plaintiff testified that she

thought it suspicious that Mr. Seay found the garden gate unlocked "[b]ecause I

felt like [he] was on a witch-hunt against me, and I feel like—I just don't feel like

he actually found that gate unlocked.  I feel like he unlocked it." (DSMF ¶ 15; Pl.'s

Dep. at 188).  Plaintiff was asked and testified to the following:

> Q.  Whether [Seay] found it unlocked or not, though, you agree that
> on that particular incident you did not personally check that night?
> A.  No, I didn't.

(DSMF ¶ 15; Pl.'s Dep. at 188-89).  Plaintiff also testified:  "I don't believe the

gate was left unlocked and, no, I did not look at it but I don't believe that it was left

unlocked. . . .  I closed the building without ensuring that—those exits, I did not

look at those."[5] (DSMF ¶ 16; Pl.'s Dep. at 194-95).  After the AACG completed its

investigation, it recommended that Plaintiff's employment be terminated.  On

August 10, 2012, Plaintiff's employment was terminated by Mr. Seay.  (DSMF

¶ 18; Seay Dec. ¶¶ 6-9; Peters Dec. ¶ 4; Hudson Dec. ¶¶ 6-8).

On October 30, 2012, Plaintiff filed a charge of discrimination with the

EEOC.  (DSMF ¶ 24; Pl.'s Dep. at 233, 236; Doc. 36, Ex. 6).  In it, Plaintiff stated

---

[5]     Plaintiff admits that after her termination she truthfully told the EEOC the
following:  "That night I checked the internal doors three times and forgot to check
that one gate.  I knew my manager was opening and was trying to ensure that I got
everything done because I know he was looking for a reason to fire me."  (DSMF ¶
17; Pl.'s Dep. at 262, Ex. 24).

that she had filed a prior EEOC charge on July 31, 2012, and that she was discharged on August 10, 2012.  ([36.8]).  Plaintiff checked the box marked "retaliation" and alleged, "I believe I have been discriminated against in retaliation for opposing unlawful employment practices . . . ."  (Id.).

Additional facts will be set forth as necessary during the discussion of Plaintiff's claims.

B.    Procedural History

On May 19, 2014, Plaintiff filed her Complaint [1], alleging that Defendant subjected her to discriminatory treatment based on her race, gender, and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.  Plaintiff alleges that her April 2012 and July 2012 disciplinary notices were discriminatory and were issued in retaliation for her statutorily-protected activities.  She also alleges that her termination was based on discrimination and was in retaliation for statutorily-protected activity.  She alleges further that Defendant violated the ADA by failing to accommodate her disability. On August 31, 2015, Defendant filed its Summary Judgment Motion.

On November 10, 2015, the Magistrate Judge issued her R&R.  In it, the Magistrate Judge noted that Plaintiff failed to offer a response to Defendant's

statement of undisputed material facts.  (R&R at 4).  The Magistrate Judge thus

deemed that Plaintiff admitted Defendant's statement of undisputed material facts.

(Id.).

The Magistrate Judge found that Plaintiff failed to establish a prima facie

case of discriminatory discipline based on her gender, race, or disability, including

because she failed to show that the April 2012 and July 2012 disciplinary notices

were adverse employment actions.  (Id. at 19-20).  The Magistrate Judge found

that, even if Plaintiff could establish a prima facie case of discrimination,

Defendant offered legitimate, nondiscriminatory reasons for issuing the

disciplinary notices to Plaintiff, and Plaintiff failed to show that these reasons were

pretexts for unlawful discrimination.  (Id. at 20-23).

The Magistrate Judge found that Plaintiff failed to establish a prima facie

case of retaliatory discipline, because she failed to establish a causal connection

between her statutorily-protected activity and any adverse employment action.  (Id.

at 30-31).  The Magistrate Judge determined that, even if Plaintiff established a

prima facie case, Defendant offered a legitimate, nondiscriminatory reason for

issuing the disciplinary notices, and Plaintiff did not show that the reason was

pretextual.  (Id. at 32).

The Magistrate Judge recommended that summary judgment be granted on

Plaintiff's claim of discriminatory termination because she did not exhaust her administrative remedies prior to filing suit.  (Id. at 33).  She determined that Plaintiff's claim for retaliatory termination also fails because Plaintiff did not show that Defendant's asserted nondiscriminatory reason for terminating Plaintiff was pretext for unlawful discrimination.  (Id. at 41).  Finally, the Magistrate Judge found that Plaintiff's claim that Defendant did not accommodate her disability under the ADA also fails.  (Id. at 48-49).  Plaintiff did not file any objections to the R&R.

## II.   DISCUSSION

### A.    Legal Standards

#### 1.    Review of a Magistrate Judge's Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  Where, as here, no party has objected to the report and recommendation, a court conducts only a plain error review of the record.  United

States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

2.      Summary Judgment Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment.  Id.

14

"[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246.  The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotations omitted).

B.    Analysis

Plaintiff alleges that Defendant subjected her to unlawful retaliation and discrimination on the basis of race, gender, and disability.  She asserts that Defendant subjected her to disparate discipline, failed to accommodate her disability, and terminated her employment in violation of Title VII and the ADA.  Defendant argues that summary judgment is warranted on all of Plaintiff's claims.

1.    <u>Defendant's Statement of Undisputed Material Facts</u>

At the outset, the Magistrate Judge noted that Plaintiff failed to offer a response to Defendant's statement of undisputed material facts.  The Local Rules of this Court:  (1) require the movant for summary judgment to provide a "separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried"; (2) require the respondent to provide responses to each of the movant's numbered undisputed material facts; and (3) state that the movant's facts will be deemed admitted absent proper refutation. LR 56.1(B)(1), (2), NDGa.  Specifically, the Local Rules require, along with a responsive brief, a response to the movant's statement of undisputed facts.  The rules provide:

(1)    This response shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts.

(2)    This Court will deem each of the movant's facts as admitted unless the respondent:  (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).

LR 56.1(B)(2)(a), NDGa.  Compliance with Local Rule 56.1 is the "only permissible way . . . to establish a genuine issue of material fact" in response to the moving party's assertion of undisputed facts.  Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008).  "The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement."  Id.  The Court must then review the movant's statement of undisputed facts and ensure—by, "[a]t the least, . . . review[ing] all of the evidentiary materials submitted in support of the motion for summary judgment"—that the movant's statement of facts is in fact supported.  Id. at 1269 (internal quotation marks omitted) (quoting United States v. One Piece of Real Property, 363 F.3d 1099, 1101-02 (11th Cir. 2004)).

In accordance with the Local Rules, the Magistrate Judge reviewed the evidentiary materials submitted by Defendant in support of its statement of undisputed facts to ensure that those facts are supported by the record.  (R&R at 4).  The Magistrate Judge deemed true, for the limited purpose of evaluating Defendant's Summary Judgment Motion, the facts contained in Section I.A. above.

The parties have not objected to any specific facts in the R&R, and the Court finds no plain error in them.  The Court thus adopts the facts set out in the R&R.  See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir.  1993); Slay, 714 F.2d at 1095.  The Court next turns to the Magistrate Judge's recommendations on Defendant's Motion for Summary Judgment.

    2. Discriminatory Discipline

  Plaintiff alleges that Defendant subjected her to discriminatory treatment based on race, gender, and disability in violation of Title VII and the ADA when the company issued disciplinary notices to her on April 11, 2012, and July 11, 2012.  Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability" in any of the "terms, conditions, [or] privileges of employment."  42 U.S.C. § 12112(a).

  To establish a prima facie case of disparate treatment based on Title VII, Plaintiff must prove that:  (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified to do the job; and

(4) her employer treated similarly situated employees outside her classification more favorably.  See Lathem v. Dep't of Children and Youth Servs., 172 F.3d 786, 792 (11th Cir. 1999); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). "To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that, at the time of the adverse employment action, [she] had a disability, [she] was a qualified individual, and [she] was subjected to unlawful discrimination because of [her] disability."  Mazzeo v. Color Resolutions, Int'l, LLC, 746 F.3d 1264, 1267 (11th Cir. 2014) (citing Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255-56 (11th Cir. 2007).

The Magistrate Judge found that Plaintiff is unable to establish a prima facie case under either Title VII or the ADA because the April 11, 2012, and July 11, 2012, notices did not rise to the level of adverse employment actions. (R&R at 18-19).  The Court agrees.  See Howard v. Walgreen Co., 605 F.3d 1239, 1245 (11th Cir. 2010) ("[O]nly those employment actions that result in a *serious and material* change in the terms, conditions, or privileges of employment will suffice." (emphasis in original) (internal quotation marks omitted)).  Because Plaintiff did not show that the disciplinary notices were materially adverse, the Magistrate Judge determined that Defendant's Summary Judgment Motion on Plaintiff's Title VII and ADA claims of discriminatory discipline should be

granted.[6]  The Court finds no plain error in these findings and recommendation.

See Slay, 714 F.2d at 1095.

3.     Retaliatory Discipline

Plaintiff next asserts that Defendant issued the disciplinary notices in

retaliation for Plaintiff's prior complaints of discrimination.  Title VII acts to shield

employees from retaliation for certain protected practices.  Specifically, the statute

provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees or applicants for
> employment . . . because he has opposed any practice made an

---

[6]     The Magistrate Judge found that, even if Plaintiff could show that the
disciplinary notices were materially adverse, she failed to make out a prima facie
case of discrimination because she did not offer any evidence to show that
Defendant issued the disciplinary notices because of her disability, race, or gender.
(R&R at 20-21).  Plaintiff did not show that similarly situated employees outside
her racial and gender classifications were treated more favorably, and Plaintiff's
own statements indicate that she believed that Mr. Seay mistreated her due to
personal conflicts rather than unlawful animus.  (See id. at 21-22).  The Magistrate
Judge also found that, even if Plaintiff established a prima facie case of disability,
race, or gender discrimination, Plaintiff failed to show that Defendant's legitimate,
nondiscriminatory reasons for issuing the disciplinary notices were pretexts for
unlawful discrimination.  (Id. at 22-23).  Plaintiff acknowledges that she engaged
in the actions that were the subjects of the April and July notices, and that her
actions violated company standards.  (See id. at 23-24).  For these additional
reasons, the Magistrate Judge determined that Defendant's Summary Judgment
Motion on Plaintiff's Title VII and ADA claims of discriminatory discipline should
be granted.  The Court finds no plain error in these findings and recommendation.
See Slay, 714 F.2d at 1095.

> unlawful practice by this subchapter, or because he has made a
> charge, testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Similarly, the ADA provides that "no person shall

discriminate against any individual because such individual has opposed any act or

practice made unlawful by [the ADA] or because such individual made a

charge . . . under [the ADA]."  42 U.S.C. § 12203(a).

To establish a prima facie case of retaliation under Title VII or the ADA, the

plaintiff must show that (1) she engaged in statutorily protected activity, (2) she

suffered an adverse employment action, and (3) there was a causal connection

between the protected activity and the adverse employment action.  See

Mealing v. Ga. Dep't of Juvenile Justice, 564 F. App'x 421, 427 (11th Cir. 2014);

Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).  The plaintiff  "'need not

prove the underlying claim of discrimination which led to [her] protest;' however,

the plaintiff must have had a reasonable good faith belief that the discrimination

existed."  Holifield, 115 F.3d at 1566 (quoting Tipton v. Canadian Imperial Bank

of Commerce, 872 F.2d 1491, 1494 (11th Cir. 1989)).  "To establish causation for

purposes of a Title VII retaliation claim, the plaintiff must prove that 'the unlawful

retaliation would not have occurred in the absence of the alleged wrongful action

or actions of the employer.'"  Taylor v. Cardiovascular Specialists, P.C.,

21

4 F. Supp. 3d 1374, 1383 (N.D. Ga. 2014) (quoting <u>Univ. of Tex. Sw. Med. Ctr.</u> <u>v. Nassar</u>, 133 S. Ct. 2517, 2533 (2013)).

The Magistrate Judge found that Plaintiff did not establish a prima face of retaliation on the basis of her April 2012 disciplinary notice, because Plaintiff did not allege she engaged in any statutorily-protected activity prior to April 11, 2012. (R&R at 31).  Plaintiff claims she complained of discrimination shortly after April 11, 2012.  The Magistrate Judge found that the three-month time period between the July 11, 2012, disciplinary notice and Plaintiff's April 11, 2012, complaint was insufficient to establish a causal link.  (<u>Id.</u> at 32).  The Magistrate Judge determined that, even if Plaintiff established a prima facie case of retaliation on the basis of her July 2012 disciplinary notice, summary judgment is warranted on Plaintiff's retaliation claim because, as with her discriminatory discipline claim, Plaintiff "failed to produce evidence which could allow a reasonable jury to find that Defendant's proffered reason is pretextual."  (<u>Id.</u>).  The Court finds no plain error in these findings and recommendation.  <u>See</u> <u>Slay</u>, 714 F.2d at 1095. Defendant's Motion for Summary Judgment on Plaintiff's retaliatory discipline claim is granted.

4.   <u>Discriminatory Termination</u>

Plaintiff claims that Defendant terminated her employment on the basis of her race, gender, and disability.  Plaintiff's discriminatory termination claim is brought pursuant to Title VII and the ADA.  Plaintiff was terminated after an investigation allegedly found that, while working as the closing manager, she had failed to secure a gate on two occasions, one in July 2012 and one in August 2012. (DSMF ¶ 12; Peters Dec. ¶ 4).  Mr. Seay terminated Plaintiff's employment on August 10, 2012.  (DSMF ¶ 18; Seay Dec. ¶¶ 6-9; Peters Dec. ¶ 4; Hudson Dec. ¶¶ 6-8).  Defendant argues that Plaintiff's claims of discriminatory termination fail because she did not exhaust her administrative remedies prior to filing suit.

"Before filing suit under Title VII [or] the ADA, . . . a plaintiff must exhaust the available administrative remedies by filing a charge with the EEOC." <u>Anderson v. Embarq/Sprint</u>, 379 F. App'x 924, 926 (11th Cir. 2010) (citing 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a)).  The Eleventh Circuit has held that a "'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" <u>Gregory v. Ga. Dep't of Human Resources</u>, 355 F.3d 1277, 1280 (11th Cir. 2004) (citations omitted); <u>accord</u> <u>Eastland v. Tenn. Valley Auth.</u>, 714 F.2d 1066, 1067 n.9 (11th Cir. 1983) ("The starting point for determining the permissible scope of

the judicial complaint is the EEOC charge and investigation."). Thus, "[i]f not reasonably related, the court is precluded from considering claims not raised in the EEOC complaint." Waldemar v. Am. Cancer Soc'y, 971 F. Supp. 547, 553 (N.D. Ga. 1996).

The Magistrate Judge found that Plaintiff did not make any allegation in her EEOC charge that her termination was based on race, gender, disability, or any other protected classification. Accordingly, the Magistrate Judge found that Plaintiff failed to exhaust her administrative remedies, and recommended that Defendant's Summary Judgment Motion be granted on Plaintiff's discriminatory termination claim. (R&R at 36). The Court finds no plain error in these findings and recommendation. See Slay, 714 F.2d at 1095.

5.    Retaliatory Termination

Plaintiff alleges that Defendant Home Depot terminated her employment in retaliation for prior complaints of discrimination, in violation of Title VII and the ADA. Defendant asserts that Plaintiff was fired because, while working as a closing manager at the Lawrenceville store, she failed to ensure that a gate was locked. The Magistrate Judge found that Plaintiff established a prima facie case of retaliatory termination. (R&R at 38). The Magistrate Judge found that Defendant met its burden to show a legitimate, nondiscriminatory reason for terminating

Plaintiff's employment.  (R&R at 39).  In analyzing whether Plaintiff showed that Defendant's proffered reason was a pretext for retaliation, the Magistrate Judge noted that Plaintiff admits she forgot to check the gate.  (R&R at 41).  Plaintiff also stated she was "forced out" by Mr. Seay not because of her protected activity, but because of her popularity with associates.  (Id. at 41-42).  The Magistrate Judge determined that Plaintiff  "has not pointed to any evidence which would permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct."  (Id. at 41 (internal quotation marks and alterations omitted)).  The Magistrate Judge thus recommended that Defendant's Summary Judgment Motion be granted on Plaintiff's retaliatory termination claim.  The Court finds no plain error in these findings and recommendation.  See Slay, 714 F.2d at 1095.

6.    Failure to Accommodate

Plaintiff's final claim is that Defendant violated the ADA by failing to accommodate her disability.  To establish a prima facie case of disability-based discrimination under the ADA, a plaintiff must demonstrate that she:  (1) has a disability as defined in the ADA; (2) is a "qualified individual," meaning that, with or without reasonable accommodations, she can perform the essential functions of the job she holds; and (3) was discriminated against because of her disability.  See

25

Mazzeo, 746  F.3d at 1268 (citing Holly, 492 F.3d at 1256).  The Magistrate Judge

found that Plaintiff met the first two prima facie elements.  With respect to the

final element, Plaintiff claimed that she requested a reasonable accommodation for

her disability and that Defendant discriminated against her under the ADA when it

failed to provide her with that reasonable accommodation.

   "An employer impermissibly discriminates against a qualified individual

when the employer does not reasonably accommodate the individual's disability."

Anderson, 379 F. App'x at 927.  A "reasonable accommodation" may include "job

restructuring, part-time or modified work schedules, reassignment to a vacant

position, acquisition or modification of equipment or devices, appropriate

adjustment or modifications of examinations, training materials or policies, the

provision of qualified readers or interpreters, and other similar accommodations for

individuals with disabilities."  42 U.S.C. § 12111(9)(b).  An employer is not

required, however, to provide an employee with "'the maximum accommodation

or every conceivable accommodation possible.'"  Stewart v. Happy  Herman's

Chesire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997) (quoting Lewis

v. Zilog, Inc., 908 F. Supp. 931, 947 (N.D. Ga. 1997)).  "The burden of identifying

an accommodation that would allow a qualified employee to perform the essential

functions of her job rests with that employee, as does the ultimate burden of

26

persuasion with respect to showing that such accommodation is reasonable." <u>Earl v. Mervyns, Inc.</u>, 207 F.3d 1361, 1367 (11th Cir. 2000); <u>see also</u> <u>Stewart</u>, 117 F.3d at 1286.  Thus, "[t]he plaintiff bears the burden of identifying a reasonable accommodation that would allow a qualified individual to perform the job, and an employer is not required to accommodate an employee in any manner in which the employee desires." <u>Gilliard v. Ga. Dep't of Corr.</u>, 500 F. App'x 860, 868 (11th Cir. 2012) (citing <u>Stewart</u>, 117 F.3d at 1285-86).

The Magistrate Judge found that Plaintiff failed to point to evidence showing that Defendant did not reasonably accommodate her disability.  She noted that, according to Plaintiff's own testimony, when she talked to Mr. Seay about the need to schedule another manager to come into work so that she could leave for dialysis, he did not refuse her request.  (R&R at 48).  Instead, Seay told Plaintiff, "well, just call somebody else to come in." (<u>Id.</u>).  The Magistrate Judge also noted that Plaintiff acknowledged she was never subjected to any discipline for missing scheduled work time due to dialysis.  (<u>Id.</u>).  Plaintiff admitted that Mr. Seay never told her that she could not leave or change her schedule for emergencies.  When Plaintiff talked with Mr. Seay about a need to change her schedule for a doctor's appointment, he never refused to do that.  (<u>Id.</u>).  The Magistrate Judge concluded that a reasonable jury could not conclude from these facts that Defendant refused

to make reasonable accommodations to Plaintiff's limitations caused by her need for dialysis.  (Id.).  The Magistrate Judge thus recommended that Defendant's Summary Judgment Motion be granted on Plaintiff's ADA failure to accommodate claim.  The Court finds no plain error in these findings and recommendation.  See Slay, 714 F.2d at 1095.

III.   **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Janet F. King's Final Report and Recommendation [43] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant Home Depot U.S.A., Inc.'s Motion for Summary Judgment [36] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this 13th day of May, 2016.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE